IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Eleanor Youngblood, ) | ) | C/A No. 0:15-559-BHH-PJG |
| Plaintiff, ) | ) | |
| v. ) | ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner ) of Social Security, ) | ) | |
| Defendant. ) _____) | | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Eleanor Youngblood, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:

PJG

 (1) whether the claimant is engaged in substantial gainful activity;

 (2) whether the claimant has a "severe" impairment;

 (3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

 (4) whether the claimant can perform her past relevant work; and

 (5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. §§ 404.1520(h), 416.920(h).



**ADMINISTRATIVE PROCEEDINGS**

In April 2012, Youngblood applied for DIB and SSI, alleging disability beginning October 15, 2010. Youngblood's applications were denied initially and upon reconsideration, and she requested a hearing before an ALJ. A hearing was held on July 16, 2013 at which Youngblood, who was represented by Beatrice Whitten, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on November 5, 2013 concluding that Youngblood was not disabled prior to July 10, 2012, but became disabled on that date and has continued to be disabled through the date of the decision. (Tr. 11-21.)

Youngblood was born in 1954 and was fifty-seven years old at the time of her established disability onset date. (Tr. 20, 150.) She has a sixth grade education and has past relevant work experience as an operator/cook and a houskeeper. (Tr. 209-10.) Youngblood alleged disability due to lower back and leg pain, high blood pressure, and high cholesterol. (Tr. 209.)

In applying the five-step sequential process, the ALJ found that Youngblood had not engaged in substantial gainful activity since October 15, 2010—her alleged onset date. The ALJ also determined that, since October 15, 2010, Youngblood's degenerative disc disease and obesity were severe impairments. However, the ALJ found that, since October 15, 2010, Youngblood did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ found that prior to July 10, 2012—the date Youngblood became disabled—she retained the residual functional capacity to

> perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). Specifically, claimant could lift and carry up to 50 pounds occasionally and 25 pounds frequently. She was able to stand, walk, and sit for 6 hours each in an 8-hour day.



(Tr. 14.)  The ALJ further found that beginning July 10, 2012, Youngblood retained the residual functional capacity to

> perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, since her established onset date, claimant has been able to lift and carry up to 20 pounds occasionally and 10 pounds frequently. She has also been able to stand, walk, and sit for 6 hours each in an 8-hour day.

(Tr. 18.)  The ALJ found that, prior to July 10, 2012, Youngblood was capable of performing past relevant work as an operator/cook at a school and that this work did not require the performance of work-related activities precluded by claimant's residual functional capacity.  However, the ALJ found that beginning July 10, 2012, Youngblood's residual functional capacity prevented her from being able to perform past relevant work.  The ALJ further found that Youngblood did not have work skills that were transferable to other occupations within the residual functional capacity and that, since July 10, 2012, considering Youngblood's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that Youngblood could perform.  Therefore, the ALJ found that Youngblood was not disabled prior to July 10, 2012, but became disabled on that date and continued to be disabled through the date of his decision.

The Appeals Council denied Youngblood's request for review on January 20, 2015, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.)  This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829

F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUE

Youngblood's sole issue for this judicial review alleges that the ALJ's residual functional capacity ("RFC") analysis is not supported by substantial evidence. In support of this issue, Youngblood presents the following arguments:

> A. The ALJ's Bifurcated RFC is not supported by substantial evidence.
> B. The ALJ did not perform a function-by-function analysis.
> C. The ALJ failed to explain why Ms. Youngblood's daily activities discredited her complaints.

(Pl.'s Br., ECF No. 17.)

## DISCUSSION

The crux of Youngblood's arguments is that the ALJ's determination that Youngblood could perform medium work and return to her past relevant work as an operator/cook from her alleged onset date until July 10, 2012 is unsupported.



The ALJ found that beginning July 10, 2012, Youngblood's RFC was reduced from medium work to light work.[2] The ALJ stated that

> [Youngblood's] established onset date corresponds to the date of the consultative examination report of Kerri Kolehma, M.D., which documents more significant abnormalities than previously reflected in [Youngblood's] primary care treatment records. (Exhibit 6F) In addition, the record reflects that near [Youngblood's] established onset date, she began seeking more extensive treatment for her complaints of pain. (Exhibits 8F, 9F, 10F, and 11F)

(Tr. 18.) Contrary to Youngblood's assertion that the ALJ failed to state what abnormalities Dr. Kolehma observed that altered the residual functional capacity assessment as of July 10, 2012, the ALJ specifically stated that "Dr. Kolehma observed claimant to have loss of lumbar lordosis, loss of the normal curvature of the lumbar spine, spasms, and loss of motion secondary to pain and spasms." (Tr. 18.) Thus, Youngblood cannot support her contention that Dr. Kolehma's consultative report appears to be largely based on radiographic evidence from prior to the established onset date. Moreover, the ALJ's opinion reflects that he relied on Dr. Kolehma's findings and observations from her consultative examination of Youngblood, which included significant abnormalities that had not been previously found in treatment records. Therefore, Youngblood's assertion that the ALJ relied on the same evidence (the radiographic findings) to find that Youngblood was not disabled before July 10, 2012 and also to find that she became disabled on that date is unsupported. The ALJ did in fact point to what changed on July 10, 2012 to support establishing it as the onset date—significant abnormalities that previously had not been found and thereafter more extensive treatment. Accordingly, the court rejects Youngblood's argument that the ALJ failed to provide a legitimate medical basis for his findings.

---

[2] Limiting Youngblood to light work resulted in a finding of disability under the medical-vocational guidelines, located at 20 C.F.R. Part 404, Subpart P, appendix 2 (the "Grids") based on Youngblood's vocational factors, including age, education, and previous work experience.

PJG

Youngblood's reliance on selective records, such as one from October 2010 suggesting that Youngblood "needs to consider possibly getting another job" (Tr. 293-94), to argue that the ALJ should have determined that Youngblood was limited to less than medium work as of her alleged onset date, does not render the ALJ's findings unsupported. As specifically found by the ALJ, the record contained no opinion evidence prior to Youngblood's established onset date. Moreover, the notation referenced by Youngblood was included in a treatment record from a physician's assistant on September 21, 2010, and at that time the physician's assistant only provided Youngblood a work excuse through October 5, 2010. Thus, Youngblood has not directed the court to any evidence offering an opinion as to any additional functional limitations during the period at issue that are expected to last twelve months.

Similarly, the court finds unavailing Youngblood's argument that the ALJ erred in failing to perform a function-by-function analysis in determining Youngblood's RFC. Cf. Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (holding that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review") (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)) (alterations in original). Youngblood asserts that the ALJ failed to explain why he found she could return to her past medium exertional level work despite the fact that physicians had restricted her from that work, she subsequently left that work, and her physical conditions improved after she left that work. However, as mentioned above, the work restrictions contained in the record were temporary work excuses completed by a physician's assistant. Further, the ALJ specifically summarized the mild findings spanning the time period up until the consultative examination by Dr. Kolehma. The ALJ observed that the medical records documented some abnormalities, but "the lack of more significant abnormalities than



reflected in these medical records and the limited treatment claimant received prior her established onset date are inconsistent with a finding of disability." (Tr. 15-16.) The ALJ stated that "an October 2010 x-ray of [Youngblood's] lumbar spine showed mild degenerative disc disease most pronounced at L5-S1 with mild facet arthropathy, degenerative grade I retrolisthesis of L5 on S1, and mild degenerative changes of the sacroiliac joints" and that a June 2012 x-ray documented similar findings. (Tr. 16.) The ALJ observed that the record documented little treatment prior to July 10, 2012. (See id.) (stating that Youngblood saw her primary care provider twice in August 2010, once in October 2010, and once in May 2011 for complaints of back pain radiating to her lower extremities). Further, the ALJ stated that Youngblood did not receive any treatment from a specialist until after the established onset date, and the treatment she did receive was conservative, consisting of stretching exercise and prescriptions for Motrin, Flexeril, and Mobic. The ALJ found that treatment notes failed to indicate that Youngblood "advised her primary care providers that her pain significantly interfered with her activities of daily living or caused significant limitation upon her ability to stand, walk, sit, lift or carry." (Id.) The ALJ also found that records prior to Youngblood's established onset date indicated generally benign findings, including that her discomfort appeared minimal and her spasms had resolved (August 2010); noting tenderness to palpation over the sacroiliac region and tenderness in the lumbar spine at L4-S and assessing chronic low back pain (May 2011); noting improvement in her low back pain (August 2011); noting no chief complaint but finding tenderness over the lumbar spine region with normal tone, muscle strength, gait, and station and assessing chronic pain syndrome (April 2012). Finally, the ALJ also specifically addressed Youngblood's obesity. Based on all of the evidence, the ALJ concluded that "the evidence fails to support a conclusion that claimant would be unable to perform the demands of medium work." (Tr. 17.) Thus, Youngblood has failed to point to contradictory evidence in the record or other



inadequacies in the ALJ's analysis that frustrate meaningful review such that remand would be appropriate.

Finally, Youngblood argues that the ALJ erred in failing to explain why her daily activities discredited her complaints, arguing that her daily activities were consistent with the ability to perform light work. However, the ALJ's decision does not reflect that he relied on Youngblood's activities to discredit her. Rather, the decision reflects that he noted a difference in her testimony concerning her abilities at the time of the hearing and her abilities as documented in a May 2012 function report. Moreover, as summarized above, Youngblood's daily activities were not the focus of his discussion discounting her credibility prior to July 10, 2012 and determining her residual functional capacity for that time. Accordingly, the court finds that Youngblood has failed to demonstrate any error by the ALJ pertaining to Youngblood's credibility or subjective complaints. See, e.g., Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996) (explaining the two-step process for the consideration of subjective complaints); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (listing the relevant factors for evaluating subjective complaints).

## RECOMMENDATION

For the foregoing reasons, the court finds that Youngblood has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
March 28, 2016                                   Paige J. Gossett
Columbia, South Carolina          UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).